UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE #305535,

    Plaintiff,                                       Hon. Janet T. Neff

v.                                                           Case No. 1:18-cv-102

CORIZON, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 36), and Defendants' Motion for Summary Judgment, (ECF No. 44). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted** and this action **terminated**.

## BACKGROUND

Plaintiff Darrin LaPine is currently incarcerated in the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF). The events giving rise to the present action occurred in 2014, while Plaintiff was incarcerated at the Lakeland Correctional Facility (LCF). Plaintiff initiated this action on January 29, 2018, against Corizon, Inc., Jeffrey Stieve, Victor Dominguez-Bem, Pamella Friess, A. Matthews, Subrina Aiken, and Amy Houtz. (ECF No. 1). The following allegations are contained in Plaintiff's complaint.[1]

---

[1] The bulk of Plaintiff's complaint consists of allegations against individuals who are not (and were not) parties to this action. These portions of Plaintiff's complaint have been disregarded except to the extent such informs Plaintiff's claims against the parties to this action.

On May 22, 2014, an "emergency mobilization" was conducted throughout the facility during which Plaintiff's prescribed wrist brace was "taken." Plaintiff informed Dr. Victor Dominguez-Bem of this circumstance. In response, Dr. Dominguez-Bem ordered a replacement wrist brace for Plaintiff. On or about May 20, 2014, however, Dr. Dominguez-Bem, "in conjunction and collusion with Pamella Friess," cancelled Plaintiff's prescription for a wrist brace. Plaintiff later learned that Dr. Jeffrey Stieve denied "all" of Plaintiff's requests for medical treatment.

On August 26, 2014, Sergeant A. Mathews "placed Plaintiff in a cage in the control center, with no toilet, no sink, no access to water, for several hours." This action constituted unlawful retaliation against Plaintiff for filing grievances on various prison personnel. Plaintiff later informed Subrina Aiken "about all of Plaintiff's medical issues that were not being taken care of." Aiken responded that "she wasn't going to assist Plaintiff." Amy Houtz later transferred Plaintiff to another facility in retaliation for filing grievances against prison personnel.

On February 14, 2018, the Honorable Janet T. Neff dismissed Plaintiff's claims against Defendants Mathews and Houtz on misjoinder grounds. (ECF No. 4). Judge Neff further concluded that "Plaintiff has adequately stated claims against the remaining Defendants for deliberate indifference to his serious medical needs." (ECF No. 4). Accordingly, the matter was served on Defendants Corizon, Dominguez-Bem, Stieve, Friess, and Aiken, who now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that

the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Defendants Corizon and Dominguez-Bem**

In his complaint, Plaintiff asserts the vague allegation that Defendant Dominguez-Bem denied him proper medical treatment. The only specific allegation, however, that Plaintiff advances against Dominguez-Bem is that the doctor improperly rescinded an accommodation permitting Plaintiff to wear a wrist brace. As for Defendant Corizon, Plaintiff asserts in his complaint that Corizon denied him necessary medical treatment pursuant to an unlawful "custom, policy and practice." Defendants Dominguez-Bem and Corizon now move for summary judgment.

        A.        Defendant Dominguez-Bem

Plaintiff alleges that Defendant denied him proper medical treatment in violation of his Eighth Amendment rights. The Eighth Amendment's prohibition against cruel and unusual

punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Dominguez-Bem has submitted an affidavit and copies of Plaintiff's medical records. This evidence reveals the following. Dr. Dominguez-Bem first examined Plaintiff on May 22, 2014. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.191-93). Plaintiff reported that he was experiencing "sharp and throbbing" pain in his left wrist which radiated into his arm. (ECF No. 37 at PageID.191). Plaintiff stated that he fell and injured his wrist several years previous. (*Id.*). The results of a physical examination were unremarkable. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.191-93).

Dr. Dominguz next examined Plaintiff on June 10, 2014. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.228-31). Plaintiff reported experiencing an "aching and sharp" pain in his right wrist. (ECF No. 37 at PageID.228). An examination of Plaintiff's right hand/wrist revealed "severe" osteoarthritis and "moderately reduced" range of motion. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.230). An examination of Plaintiff's left wrist/hand revealed "mild" osteoarthritis

and "mildly reduced" range of motion. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.230). Plaintiff was able, however, to perform numerous activities of daily living. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.228). Plaintiff was provided a bottom bunk accommodation and prescribed medication to treat his arthritis and accompanying pain. (ECF No. 36 at PageID.182; ECF No. 37 at PageID.230, 234).

On June 23, 2014, Plaintiff was examined by Dr. Dominguez-Bem. (ECF No. 36 at PageID.183; ECF No. 37 at PageID.261-63). Plaintiff reported experiencing "moderate" pain in his right wrist. (ECF No. 37 at PageID.261-62). An examination of Plaintiff's wrist revealed "somewhat limited" range of motion. (ECF No. 36 at PageID.183; ECF No. 37 at PageID.261-63). Plaintiff requested that he be provided a wrist brace, but the doctor responded that "a brace at this time is not indicated" and, furthermore, instructed Plaintiff that exercise of his wrist was the more appropriate method of treatment. (ECF No. 36 at PageID.183; ECF No. 37 at PageID.263). Plaintiff was not again examined by Dr. Dominguez-Bem. (ECF No. 36 at PageID.183; ECF No. 37 at PageID.264-89).

In response to the present motion, Plaintiff has presented evidence indicating that he was scheduled for right wrist surgery in 2012. (ECF No. 42 at PageID.308). Plaintiff has also submitted an affidavit in which he asserts that he was improperly denied the medical treatment he requested. (ECF No. 42 at PageID.309-11). Plaintiff's evidence, however, establishes only that Plaintiff disagrees with Dr. Dominguez-Bem's medical judgment and treatment decisions and believes he received negligent care. As previously noted, however, such does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Dominguez-Bem's motion for summary judgment be granted.

B.        Defendant Corizon

Corizon is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).   To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy or custom.   *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).   Plaintiff can demonstrate the existence of such a policy or custom in one of several ways: (1) prove the existence of an illegal official policy; (2) establish that an official with final decision making authority ratified illegal actions; (3) demonstrate that there existed a policy of inadequate training or supervision; or (4) establish that there existed a custom of tolerance or acquiescence of federal rights violations.   *Ibid*.   Plaintiff has failed to present evidence that would satisfy any of these requirements.   Accordingly, the undersigned recommends that Corizon is entitled to summary judgment.

**II.        Defendants Stieve, Friess, and Aiken**

Defendants Stieve, Friess, and Aiken argue that they are entitled to relief because Plaintiff has failed to properly exhaust his administrative remedies.   Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Id*.   With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion

requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the

matter to Step III.  *Id.* at ¶ FF.  The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*

In support of their motion, Defendants have identified numerous grievances which Plaintiff has pursued.  These grievances reveal that Plaintiff has failed to properly exhaust the bulk of his claims against Defendants Stieve, Friess, and Aiken.

      A.     LCF-14-09-1075-28b

Plaintiff initiated this grievance on September 17, 2014, alleging that he was being transferred to a different correctional facility in retaliation for filing grievances against prison personnel.  (ECF No. 45 at PageID.392).  This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

      B.     LCF-14-08-1014-17b

Plaintiff initiated this grievance on August 26, 2014, alleging that Defendant Mathews acted improperly when he placed Plaintiff in a cage in the control center.  (ECF No. 45 at PageID.395).  This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

      C.     LCF-14-09-1032-03e

Plaintiff initiated this grievance on September 2, 2014, alleging that his housing unit was experiencing insufficient ventilation.  (ECF No. 45 at PageID.399).  This grievance was not

asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

   D.   LCF-14-09-1031-03e

Plaintiff initiated this grievance on September 2, 2014, alleging that his housing unit was subjected to an "excessive amount of lighting." (ECF No. 45 at PageID.402). This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

   E.   LCF-14-08-0956-17z

Plaintiff initiated this grievance on August 10, 2014, alleging that Corrections Officer Johnson assaulted him the previous day. (ECF No. 45 at PageID.405). This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

   F.   LCF-14-08-0847-17b

Plaintiff initiated this grievance on July 15, 2014, alleging, in part, that Defendants Dominguez-Bem and Friess "conspired" to rescind his wrist brace accommodation. (ECF No. 45 at PageID.410). This grievance was pursued through all three steps of the grievance process. (ECF No. 45 at PageID.408-11). Plaintiff argues that this grievance was also asserted against Defendant Stieve, but that "the MDOC" altered the grievance after it was submitted. Plaintiff has presented no evidence to support this argument. Moreover, a review of the grievance itself lends no support to

Plaintiff's argument. As Defendants argue, the only change that was made to the grievance was that the grievance code was modified which does not impact or alter the substance of the grievance. Accordingly, this grievance exhausts Plaintiff's claim that Defendant Friess acted to rescind his prescription for a wrist brace.

G.      LCF-14-08-1015-28a

Plaintiff initiated this grievance on August 26, 2014, against Defendant Aiken alleging that she conspired with others to deny his requests for medical treatment. (ECF No. 45 at PageID.414). This grievance was rejected as duplicative to grievance LCF-14-08-0847-17b. This determination was upheld at steps II and III. (ECF No. 45 at PageID.412-13). Plaintiff argues that the rejection of this grievance was improper. Pursuant to MDOC Policy, a prisoner grievance is properly rejected if it "raises issues that are duplicative of those raised in another grievance filed by the grievant." (ECF No. 45 at PageID.452). A review of the two grievances reveals that in both grievances Plaintiff asserts that prison officials "conspired" to rescind his wrist brace accommodation. (ECF No. 45 at PageID.410, 414). Thus, the rejection of this grievance was not improper. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

H.      LCF-14-07-0678-17b

Plaintiff initiated this grievance on June 4, 2014, alleging that he was subjected to retaliation by two prison officials. (ECF No. 45 at PageID.417). This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

I. LCF-14-06-0749-12d1

Plaintiff initiated this grievance on June 25, 2014, alleging that Defendant Dominguez-Bem refused to treat his sore lip. (ECF No. 45 at PageID.425). This grievance was pursued through all three steps of the grievance process. (ECF No. 45 at PageID.422-26). Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

J. LCF-14-06-0734-12i1

Plaintiff initiated this grievance on June 20, 2014, alleging that Defendants Friess and Dominguez-Bem improperly rescinded his wrist brace accommodation. (ECF No. 45 at PageID.430). This grievance was pursued through all three steps of the grievance process. (ECF No. 45 at PageID.427-31). Accordingly, this grievance exhausts Plaintiff's claim that Defendant Friess improperly rescinded his prescription for a wrist brace.

K. LCF-14-05-0632-19c

Plaintiff initiated this grievance on May 22, 2014, alleging that a prison guard improperly confiscated his wrist brace during "an emergency count" conducted the previous day. (ECF No. 45 at PageID.434). This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment. Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

L. LCF-14-06-0697-28i

Plaintiff initiated this grievance on June 10, 2014, alleging that medical staff were failing to provide him proper medical care. (ECF No. 45 at PageID.438). This grievance was rejected because Plaintiff failed to attempt to resolve the issues in question prior to filing the grievance.

This rejection was upheld at steps II and III.  (ECF No. 45 at PageID.436-37).  Plaintiff argues that this grievance was improperly rejected.  Even if such were the case, however, the result is the same as this grievance was not asserted against Defendants Stieve, Friess, or Aiken.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against these Defendants.

### M.     LCF-14-05-0631-28b

Plaintiff initiated this grievance on May 22, 2014, alleging that medical providers Burch and Wright were not providing him with appropriate mental health services.  (ECF No. 45 at PageID.441).  This grievance was rejected as vague and this rejection was upheld at steps II and III.  (ECF No. 45 at PageID.439-40).  Moreover, this grievance was not asserted against any of the remaining Defendants.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

### N.     LCF-14-06-0679-28j

Plaintiff initiated this grievance on June 4, 2014, alleging that a previously filed grievance was not properly resolved.  (ECF No. 45 at PageID.444).  This grievance was not asserted against any of the remaining Defendants and does not concern Plaintiff's claims that he was denied proper medical treatment.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

### O.     LCF-14-04-0505-12c2

Plaintiff initiated this grievance on April 14, 2014, alleging that he was not receiving appropriate mental health services.  (ECF No. 45 at PageID.448).  This grievance was not asserted against any of the remaining Defendants.  Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Stieve, Friess, or Aiken.

Other than the arguments addressed above, Plaintiff has submitted no evidence that he pursued any other grievances regarding his claims against Defendants Stieve, Friess, or Aiken. Thus, with the exception of Plaintiff's claim that Defendant Friess improperly rescinded his wrist brace accommodation, Plaintiff has failed to establish that there exists any factual dispute as to whether he has properly exhausted his claims against these Defendants. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Stieve and Aiken be dismissed for failure to exhaust administrative remedies.

The undersigned further recommends that Plaintiff's claims against Defendant Friess be dismissed for failure to exhaust administrative remedies, save Plaintiff's claim that Friess improperly rescinded Plaintiff's wrist brace accommodation in violation of his Eighth Amendment rights. The undersigned further recommends, however, that judgment be entered in favor Defendant Friess on this claim. The Federal Rules of Civil Procedure expressly provide that the Court may grant summary judgment to a nonmovant so long as the claimant was given notice and an opportunity to respond. *See* Fed. R. Civ. P. 56(f); *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 2015 WL 13048810 at *2 (E.D. Mich., July 16, 2015) ("Rule 56(f) empowers the court to enter judgment 'independent of' any motion for summary judgment").

While granting judgment pursuant to Rule 56(f) is "discouraged," it is appropriate to do so where "the losing party was on notice that [he] had to come forward with all [his] evidence." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013). Plaintiff's remaining claim against Defendant Friess is identical to his claim against Defendant Dominguez-Bem, namely that the decision to rescind Plaintiff's wrist brace accommodation violated his Eighth Amendment rights. Thus, Defendant Dominguez-Bem's motion for summary judgment sufficiently put Plaintiff on notice to

come forward with all his evidence regarding the decision to rescind his wrist brace accommodation. As discussed above, however, Plaintiff's evidence and arguments are insufficient to defeat Dominguez-Bem's motion for summary judgment. For the same reasons that Defendant Dominguez-Bem is entitled to summary judgment as to this claim, the undersigned recommends that Defendant Friess is likewise entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 36), be **granted**; <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 44), be **granted**; and this action **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: May 31, 2019 　　　　　　　　　　　　　　　  /s/ Ellen S. Carmody
　　　　　　　　　　　　　　　　　　　　　　　　　ELLEN S. CARMODY
　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge